

# WIGGINS LAW GROUP
Attorneys and Counselors at Law

260 Peachtree Street, N.W., Suite 401
Atlanta, Georgia 30303

Telephone
(404) 659-2880

Facsimile
(404) 659-3274

wigginslawgroup.com

October 8, 2014

Best Buy Stores, L.P.
7601 Penn Avenue S.
Richfield MN 55423

RE: Quintin Square

Dear Sir or Madam:

Thank you for taking time to review this letter.

I am writing about civil claims that my client, Mr. Quintin Square ("Square"), has against Best Buy and certain employees arising out of his arrest on April 18, 2014.[1] To ensure that you can meaningfully evaluate this settlement offer, I am providing a detailed narrative.

## Facts

Quintin Square, who is professionally known as "Que," is a recording artist signed with Atlantic Records. He lives in Atlanta. On April 18, 2014, Square was scheduled to fly from Atlanta to New York, where he was to perform at Club Eve Ultra Lounge. Because Square's flight was an evening one, he had time to run errands during the day, which included purchasing some equipment that he needed for the evening's performance. Square and his girlfriend, Whittley Green, went to Best Buy on Hammond Drive in Atlanta. Knowing precisely what he needed (an iMac computer), Square went to the Apple computer section of the store. Square saw the iMac he wanted, and an employee pulled it from stock for him. Square took the computer (and a rugged USB 3.0 Thunderbolt hard drive) to the cashier to purchase the items.

---

[1] This is an offer of compromise and is thus not admissible as evidence. See Benn v. McBride, 140 Ga. App. 698 (1976).

EXHIBIT B

Best Buy, Page 2
October 8, 2014


At the register, he used his Bank of America debit card for the purchase, entering the PIN when prompted, and even providing his e-mail address to the cashier. The transaction was approved immediately, and Square was given a receipt and took his merchandise to the door.

Because it was raining that afternoon, Square left the iMac in the store (behind the counter), went with Green to get the car, and they drove the car to the front of the store. Square went back into Best Buy to get the iMac. Before Square left the store with the computer, an employee asked him for the receipt to match it to Square's purchase. The employee confirmed that the receipt was for the merchandise, marked and initialed the receipt, and thanked Square for shopping. Square exited the store, placed the computer in the car, and he and Green drove away.

Unbeknownst to Square, as he was leaving the store's parking lot, a Best Buy employee called 911 emergency and reported that Square had committed fraud when using a credit card to purchase the iMac computer. The caller identified Square as "a black male" with "like, a nappy fro," and she also described what Square and Green were wearing. Another Best Buy employee took the phone and provided the 911 operator with the tag number and description of the car, as well as the direction in which the car was traveling.

Square and Green were stopped by a Dunwoody police officer on Hammond Drive near Ashford-Dunwoody Road.[2] Eventually multiple patrol cars converged on the scene. The police told Square that he was under arrest for using someone else's credit card at Best Buy. A police officer took Square's wallet, phone, and the keys to the car. Square was handcuffed and placed him in the back of a patrol car.

Square remained handcuffed in the patrol car while officers discussed the situation on Hammond Drive. As it was rush hour, numerous motorists passed by and could see Square in the patrol car. One officer got in the car and Square told him that they could resolve the confusion if everyone just went back to Best Buy. The officers agreed and let Green drive the car, as the officers followed her, to Best Buy. Once at Best Buy, she and the officers went inside while Square remained handcuffed (alone) in the patrol car. The officers later came out of the store and released Square, explaining that his debit card transaction was

---

[2] I enclose the police report for your reference.

EXHIBIT B

Best Buy, Page 3
October 8, 2014

in fact valid and that Best Buy had falsely accused him.

The manager apologized to Square, explaining that Best Buy had been targeted for credit card fraud recently, and that the store simply figured that Square too was committing credit card fraud. The manager offered Square a $100 Best Buy gift card (which Square declined).

Damages

Square missed his flight to New York and thus his performance that evening.  That alone cost him about $10,000 in revenue and $3,000 in airfare.  Apart from missing a marque performance, Square was the subject of rumors after people learned of his arrest.  Beyond the embarrassment and frustration of being falsely accused of committing a crime, though, Square is dealing with the humiliation and anger that accompany what can only be described as a racial profiling.[3]

Liability

I view this case primarily as one of negligence.  See, e.g., Kroger Co. v. Briggs, 323 Ga. App. 256 (2013)(affirming jury award of $500,000 where man was wrongfully arrested for forgery because the grocery clerk incorrectly concluded the man's $100 bill was counterfeit).  Because this is a corporate store, Best Buy's loss prevention policies, including its training, supervision and implementation of those policies, will be at issue.  Although we can figure out the particulars in discovery, for now you have enough information to evaluate whether my client can maintain a negligence suit.  I believe that a DeKalb County jury can and will assign a sizable number to Best Buy for its negligence.

This case is also one involving intentional torts.  We will show that your employees racially profiled Square and then offered reckless statements to law enforcement personnel based on that

---

[3] Right now, Best Buy is in the best position to confirm whether Square was racially profiled, as customers shopping at Barney's and Macy's -- even at Best Buy -- allegedly were.  See (http://www.huffingtonpost.com/2013/10/29/macys-barneys-racial-profiling-probed_n_4173385.html)(visited August 15, 2014); see also http://www.usatoday.com/story/news/nation/2014/08/05/racial-profiling-best-buy-purdue-professor/13624725/ (visited Oct. 7, 2014).

EXHIBIT B

Best Buy, Page 4
October 8, 2014

profile. Whether your employees have done that before, I do not know. What I do know is that Square purchased a computer and hard drive with his debit card, and your employees thought that this purchase, perhaps given the amount, was fraudulent despite the approved transaction. Square will bring state-law claims for false imprisonment and malicious prosecution.[4]

Based on the actions and policies of Best Buy, Square has been injured.

Offer of Settlement

We will show that Square was racially profiled and then treated differently from other shoppers for that reason. That alone is enough to state a cause of action. But the real injury here is that this racial profiling served as the basis for having Square arrested for fraud. For that reason, we value this case in the upper six-figure to lower seven-figure range. As you assuredly know, this is because the facts will present a compelling case for punitive damages against your company.

With this understanding, Square is willing to settle and release all claims that he has against Best Buy and any others affiliated with the company who might be liable for the events described in this letter, for the sum of $495,000.00. This offer remains open until November 8, 2014. It is a time-limited demand; after that day, the offer is withdrawn. If you decline the offer, Square will promptly sue Best Buy and its John Doe employees in state court seeking damages and attorney's fees.

If you feel that any part of this letter needs clarification, or if you would like to review any documents (e.g., the signed store receipt), I am happy to help so that you can weigh the offer.

---

[4] It is admittedly premature to claim that Best Buy has violated the Georgia Fair Business Practices Act, which provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.C.G.A. § 10-1-393(a)(emphasis added). "The act provides a nonexclusive list of unlawful practices.... Except in plain and indisputable cases, whether particular conduct not listed in the FBPA amounts to an 'unfair or dectpive act or practice' is a question for the jury." Davis v. Rich's Department Stores, Inc., 248 Ga. App. 116, 118 (2001)(citing O.C.G.A. § 10-1-393(b)).

EXHIBIT B

Best Buy, Page 5
October 8, 2014

With kindest regards, I am

                              Very truly yours,

                              WIGGINS LAW GROUP

                              Cary S. Wiggins

Enclosure
CSW/sj

cc:  Q. Square

EXHIBIT B

# INCIDENT/INVESTIGATION REPORT

**Agency Name:** Dunwoody Police Department
**ORI:** GA 0447100
**Case#:** 14-002613
**Date / Time Reported:** 04/18/2014 17:35 Fri
**Last Known Secure:** 04/18/2014 17:35 Fri
**At Found:** 04/18/2014 17:35 Fri

**Location of Incident:** 1201 Hammond Dr, Dunwoody GA 30346-
**Premise Type:** Speciality Store
**Zone/Tract:** 30

## INCIDENT DATA

**#1 Crime Incident(s)** (Com): Information Report 99991
Weapon / Tools: NOT APPLICABLE/NONE

## VICTIM

# of Victims: 0   Domestic: N

## OTHERS INVOLVED

**Type:** INDIVIDUAL (NON LE)
**Code:** RP
**Name:** MCCLENDON, MORRIS JAMAL
**DOB:** /1986   **Age:** 27   **Race:** B   **Sex:** M
**Home Address:** 3149 Glenloch Pl Lawrenceville, GA 30044
**Home Phone:** 770-733-5035
**Employer Name/Address:** BEST BUY, 1201 Hammond Dr

**Type:** INDIVIDUAL (NON LE)
**Code:** IO
**Name:** SQUARE, QUINTIN KARLANDO
**DOB:** /1990   **Age:** 23   **Race:** B   **Sex:** M
**Home Address:** 5108 Ashford Gables Dr Atlanta, GA 30338

## PROPERTY

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI# | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
|  | 02 | RELE | $0.00 |  | 1 | 2013 BLU, PQN1656 GA | DODG Challenger | 2C3CDYAG1DH700191 |

**Officer/ID#:** STEVENS, M. (1443)
**Invest ID#:** STEVENS, M. (1443)
**Supervisor:** ESPINOZA, F. (1427)
**Case Status:** Exceptionally Cleared   04/18/2014
**Case Disposition:**
Page 1

Printed By: SWARNER,   Sys#: 31124   04/21/2014 17:01:30

EXHIBIT B

# Incident Report Additional Name List

Dunwoody Police Department

OCA: 14-002613

Additional Name List | Page 2

| NameCode/# | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|
| 1) IO  2 | GREEN, WHITTLEY CHARNELL | | ▮1989 | 24 | B | F |
| Address | 1369 Colony East Ct, Stone Mtn, GA 30083- | | H: | | | |
| Empl/Addr | | | B: | | | |
| | | | Mobile #: | | | |

R_CS7NC          Printed By: SWARNER,          04/21/2014 17:01

EXHIBIT B

**INCIDENT/INVESTIGATION REPORT**

By: SWARNER,    04/21/2014 17:01

*Dunwoody Police Department*

Page 3

Case# 14-002613

Status Codes: 1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown

| | IBR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |

Assisting Officers
STALLINGS, A.K. (1459),  LEWIS, J. (1436)

Suspect Hate / Bias Motivated:

Page 3

NARRATIVE

EXHIBIT B

| REPORTING OFFICER NARRATIVE | | OCA |
|---|---|---|
| Dunwoody Police Department | | 14-002613 |
| Victim | Offense<br>*INFORMATION REPORT* | Date / Time Reported<br>*Fri 04/18/2014 17:35* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

ON 04/18/14 AT APPROXIMATELY 1741 HOURS I RESPONDED TO BEST BUY, LOCATED AT 1201 HAMMOND DRIVE, IN REFERENCE TO A FRAUD IN PROGRESS. THE COMPLAINANT, A BEST BUY EMPLOYEE, ADVISED A BLACK MALE, WEARING A RED SWEATSUIT, AND A BLACK FEMALE, WEARING A GRAY SWEATSUIT, "USED A FRAUD CREDIT CARD TO MAKE A COMP PURCHASE." THE COMPLAINANT THEN ADVISED THE TWO SUSPECTS LEFT THE SCENE IN A BLUE DODGE CHALLENGER.

PRIOR TO MY ARRIVAL, OFFICER J. LEWIS LOCATED AND STOPPED A BLUE DODGE CHALLENGER ON HAMMOND DRIVE AT ASHFORD DUNWOODY ROAD. WITH THE HELP OF SERGEANT R. PARSONS, HE OBTAINED A DRIVER'S LICENSE FROM THE DRIVER, A BLACK MALE WEARING A RED SWEATSUIT, AND THE PASSENGER, A BLACK FEMALE WEARING A GRAY SWEATSUIT. BOTH DRIVERS LICENSES WERE CHECKED AGAINST NCIC/GCIC FILES, WHICH SHOWED THE DRIVER, LATER IDENTIFIED AS QUINTIN KARLANDO SQUARE, TO HAVE A SUSPENDED DRIVER'S LICENSE (VIOLATION DATE 02/05/2014 AND SUSPENSION DATE 04/15/2014).

MR. SQUARE WAS ASKED TO EXIT THE VEHICLE, WHICH HE DID. HE WAS PLACED INTO HANDCUFFS BY SERGEANT PARSONS AND, UPON MY ARRIVAL, PLACED IN THE REAR OF MY PATROL VEHICLE. THE FEMALE PASSENGER, LATER IDENTIFIED AS WHITTLEY GREEN, WAS PERMITTED TO DRIVE HER VEHICLE TO THE FRONT OF THE BEST BUY.

SERGEANT PARSONS MET WITH THE COMPLAINANT, MORRIS McCLENDON, WHILE I REMAINED WITH MR. SQUARE. MR. McCLENDON STATED THAT HE THOUGHT THE CARD WAS FRAUDULENT BUT, UPON FURTHER INSPECTION WITH SERGEANT PARSONS, HE DETERMINED THE CARD WAS IN MR. SQUARE'S NAME AND THAT THE PURCHASE WAS VALID.

AFTER CONFERRING WITH SERGEANT PARSONS, THE DECISION WAS MADE TO RELEASE MR. SQUARE FROM CUSTODY AND NOT CHARGE HIM WITH THE OFFENSE OF DRIVING ON A SUSPENDED LICENSE, SINCE THE FINANCIAL TRANSACTION CARD USED DURING THE INITIAL PURCHASE WAS VALID AND HE WOULD NOT HAVE GARNERED THE ATTENTION OF LAW ENFORCEMENT OTHERWISE.

MR. SQUARE WAS IMMEDIATELY REMOVED FROM THE REAR OF MY PATROL UNIT, THEN THE HANDCUFFS WERE REMOVED FROM HIS WRISTS. I EXPLAINED TO MR. SQUARE THAT THE DECISION TO TAKE HIM INTO CUSTODY WAS BASED ON TESTIMONY FROM MR. McCLENDON, AND THAT OFFICERS ARE REQUIRED TO ACT IN GOOD FAITH WHEN A CRIME IS REPORTED. I ALSO ADVISED HIM THAT STATE LAW STATES THAT HE SHOULD BE TAKEN TO JAIL FOR DRIVING ON A SUSPENDED LICENSE, BUT THAT WE WERE GOING TO RELEASE HIM WITH A WARNING DUE TO THE CIRCUMSTANCES. AFTER MAKING SURE THAT MR. SQUARE UNDERSTOOD THE ACTIONS TAKEN BY DUNWOODY POLICE DEPARTMENT OFFICERS, AND AFTER ANSWERING ALL QUESTIONS, MR. SQUARE AND MS. GREEN LEFT THE SCENE IN MS. GREEN'S VEHICLE.

I ENTERED THE LOCATION AND SPOKE TO MR. McCLENDON AND OTHER PERSONNEL AT BEST BUY. I EXPLAINED THE IMPORTANCE OF CERTAINTY AND ASKED THAT THEY BE CAREFUL TO

Reporting Officer: *STEVENS, M.*
Printed By: SWARNER,     04/21/2014 17:01

Page 4

**EXHIBIT B**

| REPORTING OFFICER NARRATIVE | | OCA |
|---|---|---|
| *Dunwoody Police Department* | | *14-002613* |
| Victim | Offense | Date / Time Reported |
| | *INFORMATION REPORT* | *Fri 04/18/2014 17:35* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

ONLY RELAY VERIFIED INFORMATION TO LAW ENFORCEMENT OFFICIALS ON FUTURE CALLS. I THEN WENT BACK IN SERVICE.

THERE IS NO FURTHER INFORMATION AVAILABLE AT THIS TIME.

Reporting Officer: STEVENS, M.
Printed By: SWARNER,    04/21/2014 17:01

Page 5

EXHIBIT B

## Incident Report Related Vehicle List

Dunwoody Police Department

OCA: *14-002613*

| | | | | | |
|---|---|---|---|---|---|
| 1 | VehYr/Make/Model<br>*2013 DODG, Challenger* | Style<br>*CP* | Color<br>*BLU* | Lic/Lis<br>*PQN1656 GA 2014* | Vin<br>*2C3CDYAG1DH700191* |
| | IBR Status<br>*Released To Owner* | Date<br>*04/18/2014* | Location<br>*1201 HAMMOND DR, DUNWOODY GA* | | |
| | Condition | Value<br>*$0.00* | Offense Code<br>*9999* | Jurisdiction<br>*Locally* | State #   NIC # |
| | Name (Last, First, Middle)<br>*Green, Whittley Charnell* | | Also Known As | Home Address<br>*1369 COLONY EAST CT*<br>*STONE MTN, GA 30083* | |
| | Business Address | | | | |

| DOB.<br>*█ 1989* | Age<br>*24* | Race<br>*B* | Sex<br>*F* | Hgt<br>*504* | Wgt<br>*165* | Scars, Marks, Tattoos, or other distinguishing features |

Notes

---

R_CS9IBR    Printed By: SWARNER,    04/21/2014 17:01

EXHIBIT B Page 6